**SO ORDERED.**

**SIGNED September 20, 2006.**



_____
GERALD H. SCHIFF
UNITED STATES BANKRUPTCY JUDGE
_____

```
                  UNITED STATES BANKRUPTCY COURT
                   WESTERN DISTRICT OF LOUISIANA


IN RE:

CAJUN FORGE COMPANY, INC.                    CASE NO. 03-51828

     Debtor                                  CHAPTER 11
-----------------------------------------------------------------
CAJUN FORGE COMPANY, INC.

     Plaintiff

VERSUS                                       ADV. CASE NO. 04-5074

ANVIL INTERNATIONAL, L.P.

     Defendant
-----------------------------------------------------------------
                       REASONS FOR DECISION
-----------------------------------------------------------------
```

Cajun Forge Company, Inc. ("Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 13, 2003. The Debtor's Chapter 11 Plan of Reorganization was confirmed on June 9, 2004. Shortly thereafter, the Debtor

filed an Objection to Claim of Anvil International, L.P. ("Anvil") and a Complaint for Damages against Anvil. The two proceedings were consolidated. Presently before the court is Anvil's Motion for Summary Judgment. A hearing on the Motion was held on August 9, 2006. After hearing argument from counsel, the matter was taken under advisement.

**JURISDICTION**

The case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

These Reasons for Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

**FACTUAL BACKGROUND**

On March 6, 2003, the Debtor and Anvil entered into a lease agreement with Anvil leasing to the Debtor a forging facility in Fort Worth, Texas. The lease agreement called for rental payments of $99,600.00 per year, paid monthly. The lease ran for a term of 48 months. On that same date, the Debtor also entered into a Manufacturing and Supply Agreement with Anvil to supply forgings to

Page 2

Anvil. The Debtor's operations in Fort Worth were unsuccessful and, shortly after the commencement of the lease, the Debtor moved its operations back to Louisiana.

Anvil has filed a proof of claim in the Debtor's bankruptcy case asserting a claim in the amount of $648,372.08, with $472,297.77 alleged as secured. The security alleged is "set-off payments." The claim sets forth an itemization of costs incurred due to the Debtor's failure to perform under the agreements as well as $99,600.00 as lease rejection damages for one year.

In it's Complaint, the Debtor alleges that the equipment at the Fort Worth facility did not meet the standards as represented by Anvil. The Complaint sets forth the following causes of action: (1) breach of contract; (2) fraud and unfair trade practices; and (3) open account.

## LAW AND ANALYSIS

### Summary Judgment Standard

Rule 56(c), Fed. R. Civ. P.[1], requires summary judgment to "be rendered forthwith if . . . there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A summary judgment can be granted if the moving party can "show that there is no genuine issue as to any

---

[1] Rule 56, Fed. R. Civ. P., applies in adversary proceedings. Rule 7056, Fed. R. Bank. P.

material fact and that the moving party is entitled to a judgment as a matter of law." Ibid.; Hale v. Townley, 45 F.3d 914, 917 (5th Cir. 1995). "Under Fed. R. Civ. P. 56 (c), the moving party bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." In re Browning-Ferris Industries, Inc. Securities Litigation, 876 F. Supp. 870, 877 (S.D. Tex. 1995), citing Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986); Leonard v. Dixie Well Service & Supply, Inc., 828 F.2d 291, 294 (5th Cir. 1987).

The party moving for summary judgment bears the burden of establishing by affidavit or other evidence that there is no genuine dispute as to any material fact necessary to the resolution of the case before the Court and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986). However, "[s]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

**Breach of Contract**

Page 4

The Debtor alleges breach of contract on the basis that Anvil failed to provide adequate, functional equipment. The Debtor enumerates numerous problems with various items of equipment, including that the induction furnaces were not capable of producing 5,500 pounds per hour as the Debtor alleges was represented by Anvil. The Debtor further points to various malfunctions with other equipment.

Anvil asserts that there is no genuine issue of material fact on the breach of contract claim as the allegations of the Debtor in this regard are in clear contradiction with the express terms of the contract at issue. The court agrees.

Section 1.02 of the lease agreement provides that:

> Tenant hereby acknowledges and agrees that Tenant has examined and inspected the Premises, that Tenant accepts the Premises as being in good order and condition and that the Premises comply in all respects with the requirements of this Lease and are in all respects suitable for the purposes intended by Tenant.

In addition, Section 7.02 of the lease agreement provides as follows:

> Throughout the Term, Tenant shall operate the Equipment at Tenant's own cost and expense. The Equipment shall be operated by fully qualified and duly authorized personnel only and shall be operated in accordance with any and all applicable laws and regulations. Tenant shall provide a suitable environment for the Equipment including but not limited to providing adequate space, electrical power, electrical connections, air conditioning and humidity control.

Page 5

Each and every allegation made by the Debtor is contrary to the very terms of the lease agreement. The Debtor cannot establish a claim for breach of contract when the very contract under which the claim is made contradicts the Debtor's allegations.

The court finds that there is no genuine issue of material fact regarding the Debtor's breach of contract claim. That claim is dismissed as the Debtor cannot establish a claim for breach of contract.

### Fraud and Unfair Trade Practices

The Debtor makes the same factual allegations to support its claim for fraud and unfair trade practices as those set forth in support of its breach of contract claim. Specifically, the Debtor asserts that there were oral and written misrepresentations that (1) the induction furnace on the 2,200 ton press could produce 5,500 pounds per hour; and (2) all equipment at the facility was in good working order and could be operated safely. The Debtor asserts that these representations were false and fraudulent.

In order to establish a claim for fraud and/or unfair trade practices, the Debtor must prove that the representations were false. Anvil argues that the representations were either true or are contradicted by written provisions in the lease and supply agreement such that the Debtor could not reasonably rely on any contrary representations.

The Debtor does not deny that it had the opportunity to examine the equipment in the Fort Worth facility and that it did in fact examine the equipment. This fact is supported by Section 1.02 of the lease agreement which clearly states that the Debtor has examined and inspected the premises and accepted the facility as being in good order and condition. The Debtor argues that the problems with the equipment were not discovered until it was able to operate the equipment itself after the contracts were signed. If this were the case, however, the Debtor should not have signed a contract stating that it accepted the facility as being "in good order and condition and that the Premises comply in all respects with the requirements of this Lease and are in all respects suitable for the purposes intended by Tenant." This provision of the Lease Agreement is clearly contrary to the allegations now being asserted by the Debtor. For that reason, the court finds that the Debtor cannot possibly establish a claim for fraud and/or unfair trade practices. There is no genuine issue of material fact regarding that claim and thus the Debtor's claim for fraud and/or unfair trade practices is dismissed.

### Open Account

Finally, the Debtor asserts that Anvil never paid for fittings which were produced and supplied to Anvil by the Debtor pursuant to the Supply Agreement prior to the time that the Debtor left the Fort Worth facility. Under the Supply Agreement, the Debtor was

required to produce fittings meeting certain requirements to Anvil. While the Debtor was operating at the facility, certain fittings were produced for Anvil. The Debtor delivered the fittings to Anvil and submitted invoices totaling $176,074.31. Anvil did not pay the Debtor for those fittings and now argues that the fittings did not meet their requirements.

The court has reviewed the evidence submitted and finds that a genuine issue of material fact exists as to whether any or all of the fittings met the requirements of the Supply Agreement and as to whether Anvil complied with the provisions of the Supply Agreement in rejecting the fittings. For that reason, the Motion for Summary Judgment must be denied with regard to the Debtor's cause of action for open account.

### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Anvil is **GRANTED IN PART** in that counts 1 and 2 of the Complaint are **DISMISSED**. The Motion for Summary Judgment is **DENIED** with regard to count 3 of the Complaint. The Objection to the Anvil proof of claim will be determined at the time the court concludes the trial of count 3 of the Complaint. Within 20 days, counsel for Anvil shall submit an order in conformity with the foregoing Reasons for Decision.

###